## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

NEW BALANCE ATHLETICS, INC.,

      Plaintiff,

      v.

STEVEN MADDEN, LTD.,

      Defendant.

C.A. No.   1:22-cv-10879

## **COMPLAINT**

1.     This is a design patent, trademark infringement, and unfair competition case. Defendant Steven Madden, Ltd. ("Madden") has deliberately copied Plaintiff New Balance Athletics, Inc.'s ("New Balance") patent-protected 327 model sneaker and traded off of New Balance's design, goodwill, and reputation.

2.     As described more fully below, New Balance launched its 327 model sneaker (the "327") bearing a novel and distinctive design in 2020.  The 327 (pictured on the left, below) quickly became one of New Balance's most popular and best-selling shoe models.

3.     Upon information and belief, in late 2020 or early 2021, Madden launched its "Chasen" model sneaker (pictured on the right, below)—a deliberate knock-off intended to free-ride off of the popularity of New Balance's 327.  Indeed, one need only compare the two shoes side by side to appreciate the brazen copying in which Madden engaged.



4.     Madden's motive for copying the design of New Balance's 327 is not difficult to

discern.  In the year following its launch, numerous leading fashion news outlets noted both the commercial and critical success of the 327's design, which has sold several million pairs, and been hailed as having conquered the fashion scene.

5.      Nor is the practice of copying designs from other companies beyond the norm of Madden's behavior.  Rather, it appears that copying the designs of other shoe manufacturers is standard operating procedure for Madden, and it has been sued for misappropriating the creative designs of competitors more than a dozen times in recent years.  This is yet another example of Madden stealing the creative work of its competitors and trading off of their goodwill.

## PARTIES

6.      New Balance Athletics, Inc. is a Massachusetts corporation with its principal place of business at 100 Guest Street, Boston, Massachusetts 02135.

7.      Upon information and belief, Madden is a corporation organized and existing under the laws of the state of Delaware with a principal place of business at 52-16 Barnett Avenue, Long Island City, New York 11104.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over these claims pursuant to 15 U.S.C. § 1121(a), 28 U.S.C. §§ 1331, 1332(a)(2), 1338(a) and (b), and this Court's supplemental jurisdiction under 28 U.S.C. § 1367.

9.      New Balance is a citizen of Massachusetts.  Madden is a Delaware corporation and is a citizen of New York.  As such, there is complete diversity of the parties.  The matter in controversy exceeds $75,000, exclusive of interests and costs.

10.     Upon information and belief, venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and (c) because this is the judicial district where: (i) a substantial part of the events giving rise to the claims occurred; and (ii) where the Defendant is subject to personal jurisdiction.

11.     Upon information and belief, Madden regularly solicits and conduct business in Massachusetts.

12.     Madden and its wholly-owned subsidiary, Steven Madden Retail, share officers and directors, and submit consolidated financial statements to the United States Securities and Exchange Commission.

13.     Madden, through its wholly-owned subsidiary Steven Madden Retail is registered to conduct business in Massachusetts.

14.     Madden, through its wholly-owned subsidiary Steven Madden Retail, operates at least two retail stores in Massachusetts, including retail stores at 118 Newbury Street, Boston, Massachusetts 02116, and 551 Assembly Row, Somerville, Massachusetts 02145.

15.     Madden, through its wholly-owned subsidiary Steven Madden Retail, operates an e-commerce website that is accessible throughout the United States, including in Massachusetts.

## FACTS

16.     New Balance is a private company that was founded in 1906, and headquartered in Brighton, Massachusetts.  Today, New Balance is one of the largest athletic footwear and apparel companies in the world, offering products in more than 120 countries.  It has over 7,000 employees worldwide.

17.     Since its earliest days, New Balance has focused on fit and authenticity as its core brand message.  New Balance is one of the few athletic footwear manufacturers to make shoes in true width sizing, rather than the more common narrow and wide.  It is the only major company that manufactures athletic footwear in factories in the United States.  Because of its brand qualities, New Balance has some of the most brand-loyal customers in the marketplace.

18.     New Balance sells a complete line of performance footwear, including running, walking, hiking, basketball, baseball, soccer, tennis, and golf shoes.

19.     New Balance also sells lifestyle footwear that may have some performance characteristics but are popular because they are fashionable or "on trend."  New Balance's footwear in its lifestyle category accounts for more than a billion dollars in annual revenue.

**New Balance's Intellectual Property**

*The 327 Design*

20.     As noted above, New Balance introduced the 327 design in 2020.  It is a novel design that represents a deliberate combination of iconic New Balance silhouettes, design elements, and materials, and features a novel sole design that curls up the front toe and up the back of the heel in a distinctive manner with a distinctive pattern of circular treads.



21.     The New Balance 327 model is the subject of issued design patents US D932,755 (for "Shoe Sole") (*see* **Exhibit A**) and US D939,813 (for "Outsole") (*see* **Exhibit B**) (together the "New Balance Design Patents") that grant New Balance the exclusive rights to elements of the sole design as shown below in solid lines:



22.     The 327 is available in a range of colorways, and is also available in special-edition

collaborations with well-known third-party designers and brands, including: Staud, Casablanca, Dao-Yi Chow, Levi's, and Jolly Rancher. It also is the subject of special-edition collaborations with New Balance sponsored athletes: NBA All-Star Kawhi Leonard and U.S. Open Champion Coco Gauff.

23.     The 327 was an instant success—after only one year on the market New Balance sold millions of pairs in 2021.

24.     The success of the 327 has been widely acknowledged in the fashion and footwear media.  For example:

- Vogue: the 327 is "conquering the fashion scene" *See* **Exhibit C** (https://www.vogue.fr/fashion/article/trend-sneakers-new-balance-327);

- GQ: "the most desirable new New Balance drop in recent memory—possibly ever—because it so shamelessly leans into the brand's rich and coveted history" *See* **Exhibit D** (https://www.gq.com/story/sneaker-of-the-week-casablanca-new-balance-327);

- Sneaker Freaker: New Balance is "absolutely steamrollin' with the 327 at the moment" with "killer colabs with fashion's upper echelons" *See* **Exhibit E** (https://www.sneakerfreaker.com/releases/make-the-new-balance-327-primary-pack-your-main-focus);

- Footwear News: "When fashion house Casablanca revealed its New Balance collaboration at Paris Fashion Week in January, the buzz around the athletic brand's 327 sneaker was palpable." *See* **Exhibit F** (https://footwearnews.com/2020/focus/athletic-outdoor/newbalance-327-sneaker-release-date-info-1202977283/).

### *The N Marks*

25.     Since the 1970s, New Balance has exclusively used distinctive N marks to identify its goods.  The designs may vary slightly, but an N has appeared on the side of nearly all New Balance footwear sold for more than forty years.  In the aggregate, New Balance has used an N on more than one billion products sold in the United States.

26.     The N Marks are also used in numerous places on or in hundreds of stand-alone retail stores and third-party footwear and apparel retailers across the United States.

27.     In the past three years, New Balance has spent over $1 billion in marketing worldwide, with a substantial portion of the expenditures being directed to the United States and

the vast majority used toward marketing and advertising that incorporates the N Marks.

28.     New Balance markets its brand in all channels, including television, print, digital, social media, and at point of purchase.  In the past decade, its marketing has made more than one billion consumer impressions.  Its website has more than thirty-five million annual visitors; its Instagram account has more than six million followers; and its Facebook account has more than eight million followers.  All of these channels prominently feature the N Marks.

29.     As a result of its long-standing, exclusive use of the distinctive N Marks in commerce in connection with footwear (and other goods), New Balance has acquired valid and strong common law trademark rights.

30.     The Federal District Court for the District of Delaware has found the N Marks famous.  *See New Balance Athletics, Inc. v. USA New Bunren Int'l Co.*, 424 F. Supp. 3d 334 (D. Del. 2019).

31.     New Balance owns an incontestable federal registration, U.S. Reg. No. 3,282,106 for the letter N for footwear.  *See* **Exhibit G**.

32.     New Balance also owns an incontestable federal registration, U.S. Reg. No. 1,308,133 for the letter N located on the side of shoe as shown here:



*See* **Exhibit H**.

33.     N Marks appear on a wide range of New Balance footwear, from performance footwear to lifestyle footwear.  For example:





### Defendant's Infringing Conduct

34.     Upon information and belief, the Madden brand was launched three decades ago by Steve Madden, a fashion designer and businessman.  Among other goods, Madden sells footwear and apparel.

35.     Upon information and belief, Madden's business is divided into five segments: Wholesale Footwear; Wholesale Accessories/Apparel; Retail; First Cost; and Licensing.  The Wholesale Footwear segment includes the Madden Girl brand.  The Retail segment is comprised of Madden's wholly-owned subsidiary Steven Madden Retail, Inc. ("Steven Madden Retail"), which operates Madden's retail stores and e-commerce websites.

36.     Upon information and belief, Madden began selling its original "Chasen" model shoe in June of 2021, after New Balance's 327 shoe design had already achieved significant market and critical design success and recognition.

37.     Upon information and belief, Madden launched the "Chasen" model design specifically to capitalize on and free-ride off of the success that New Balance had achieved with its 327 model shoe.

38.     The original "Chasen" model shoe sold by Madden beginning in 2021 (the "original Chasen") not only slavishly copied the design of the 327 model shoe, including the distinctive

outer sole design, but it also utilized two diagonal downward stripes that copied the placement and mimicked the appearance of the two sides of New Balance's famous "N" mark, as shown below.



39.    This is not the first time that Madden has been accused of free-riding off of other designers' shoe designs.   Indeed, it appears to be a common business strategy for Madden to identify popular innovative designs and copy them to capitalize on the creativity of other shoe manufacturers.   Madden was sued by Converse, Inc. in 2020 for copying Converse's Run Star Hike platform sneaker.   It was also sued in 2020 by Deckers Outdoor Corp. for copying Deckers' UGG Fluff Yeah shoe.   The year before, claims were brought against Madden by Rothy's, Inc. for copying its "The Point" ballet flat.   In fact, since 2006, Madden has been involved in more than a dozen lawsuits in which it was accused of knocking off popular designs created by other shoe designers.

40.    New Balance learned of Madden's intention to launch the confusingly similar "Chasen" shoe even before Madden actually shipped the shoes, and counsel for New Balance wrote to Madden on April 20, 2021, warning it of the infringement.   Because New Balance's design patents had not yet issued for the sole design of the 327, New Balance focused on the confusing similarity between Madden's use of the downward angled stripes in connection with the distinctive design in identifying the infringement.

41.    In response to the correspondence from New Balance's counsel, counsel for Madden sent a letter on May 6, 2021, denying any infringement, but asserting that it intended to discontinue the original Chasen shoe.

42. In reliance on representations by Madden's counsel that Madden would discontinue selling the Chasen shoe, New Balance did not pursue any legal action at that time.

43. New Balance's design patents D932,755 and D939,813 issued in October of 2021 and January of 2022. Shortly after the second of these registrations issued, New Balance conducted an investigation to determine whether Madden had ceased selling the Chasen shoe. Through that investigation, New Balance learned that Madden was still selling the original Chasen shoe, as it was being advertised on internet retail outlets, for example on Macy's website:



(highlighting added).

44. But the investigation revealed more. Madden had not ceased the sale of the original Chasen shoe, rather it had doubled down and made a minor alteration to the Chasen design (the "stripeless Chasen") by removing the downward sloping stripes, and relaunching the same design that continued to mimic and free-ride off the novel design of New Balance's 327—including the outsole upon which design patents had been issued.



45.     As a result, on February 18, 2022, counsel for New Balance wrote to counsel for Madden, alerting Madden of the continuing sales of the infringing original Chasen shoe, as well as of the infringing stripeless Chasen shoe, which any ordinary observer would find substantially the same as the patent-protected New Balance 327 design.  New Balance, through counsel, demanded that Madden cease all marketing and sales of both the original and stripeless  Chasen shoes, issue a recall to retailers so that all inventory could be destroyed, and provide an accounting of all profits from sales of all Chasen model shoes.  Through a series of correspondence, Madden, through its counsel, refused these demands.

46.     There is no question that an ordinary observer of either model of the Chasen shoe in comparison to the New Balance 327 shoe design, giving such attention that a shoe purchaser usually gives, would find the two designs to be substantially the same.  In addition, Madden's use of the two diagonal stripe design in connection with the nearly identical shoe design would cause confusion for consumers, or cause consumers to assume that the shoe is associated with or otherwise sponsored by or affiliated with New Balance.

47.     Madden and New Balance advertise through overlapping marketing channels insofar as they use popular magazines and the Internet, including the same social media platforms, to advertise the relevant goods.  In addition, the parties' relevant goods are routinely the topic of discussion in the same fashion magazines and on popular fashion websites, blogs, and social media posts.

48.     Madden and New Balance sell the relevant goods through overlapping sales channels insofar as they both sell their goods through the same retails stores (e.g., Nordstrom and Macy's) and through the Internet.

49.     Upon information and belief, like New Balance, Madden is also well-known for its collaborations with others.  Madden's participation in collaborations significantly increases the likelihood of consumer confusion concerning an affiliation, connection, or association between New Balance and Madden because consumers are likely to believe that New Balance authorized or licensed Madden to use the novel 327 shoe design and its famous N Marks on its shoes.  Had New Balance authorized Madden to design special edition products, it might have been a highly successful collaboration—like New Balance's collaborations with J. Crew, Jaden Smith, Casablanca, Kith, atmos, Louis De Guzman, Todd Snyder, and others.  New Balance, however, never authorized or licensed Madden to use its patented designs or trademarks.

50.     As a result of the foregoing, New Balance has suffered and will continue to suffer irreparable harm and monetary harm in an amount to be determined at trial.

### COUNT I
### (Design Patent Infringement—35 U.S.C. § 271)
### (U.S. Patent No. D932,755)

51.     New Balance repeats and realleges the allegations contained in paragraphs 1 through 50 above as if fully set forth herein.

52.     New Balance is the owner of the entire right, title, and interest in the issued design patent U.S. Patent No. D932,755 for "Shoe Sole" (the "'755 Patent") and possesses all rights of recovery under the '755 Patent, including the right to recover damages.

53.     The '755 Patent was duly and lawfully issued by the United States Patent and Trademark Office on October 12, 2021.

54.     Madden, alone or in concert with others, has been and now is infringing New Balance's '755 Patent in violation of 35 U.S.C. § 271 by making, using, selling, and offering for sale, products embodying New Balance's patented design for such products, and will continue to do so unless enjoined by the Court.

55.     Madden's infringing acts include making, using, selling, offering to sell, and importing products covered by the '755 Patent including, but not limited to, the original Chasen shoe and the stripeless Chasen shoe.

56.     Upon information and belief, Madden has sold, made offers to sell, continues to sell, and/or offers to sell products infringing the '755 Patent throughout the United States and elsewhere, including within Massachusetts.

57.     New Balance has been damaged by Madden's infringement in an amount to be determined at trial and has no adequate remedy at law.

58.     Upon information and belief, Madden's infringing products were copied from New Balance's 327 shoe, covered by the '755 patent.  Upon further information and belief, Madden's infringement of the '755 Patent is willful and deliberate.

## COUNT II
### (Design Patent Infringement—35 U.S.C. § 271)
### (U.S. Patent No. D939,813)

59.     New Balance repeats and realleges the allegations contained in paragraphs 1 through 58 above as if fully set forth herein.

60.     New Balance is the owner of the entire right, title, and interest in the issued design patent U.S. Patent No. D939,813 for "Outsole" (the "'813 Patent") and possesses all rights of recovery under the '813 Patent, including the right to recover damages.

61.     The '813 Patent was duly and lawfully issued by the United States Patent and Trademark Office on January 4, 2022.

62.     Madden, alone or in concert with others, has been and now is infringing New Balance's '813 Patent in violation of 35 U.S.C. § 271 by making, using, selling, and offering for sale, products embodying New Balance's patented design for such products, and will continue to do so unless enjoined by the Court.

63.     Madden's infringing acts include making, using, selling, offering to sell, and importing products covered by the '813 Patent including, but not limited to, the original Chasen shoe and the stripeless Chasen shoe.

64.     Upon information and belief, Madden has sold, made offers to sell, continues to sell, and/or offers to sell products infringing the '813 Patent throughout the United States and elsewhere, including within Massachusetts.

65.     New Balance has been damaged by Madden's infringement in an amount to be determined at trial and has no adequate remedy at law.

66.     Upon information and belief, Madden's infringing products were copied from New Balance's 327 shoe, covered by the '813 Patent.  Upon further information and belief, Madden's infringement of the '813 Patent is willful and deliberate.

### COUNT III
### (Trademark Infringement—15 U.S.C. § 1114)
### (The N Marks)

67.     New Balance repeats and realleges the allegations contained in paragraphs 1 through 66 above as if fully set forth herein.

68.     As described above, New Balance owns the distinctive and federally registered N Marks as depicted in at least U.S. Reg. Nos. 3,282,106 and 1,308,133.

69.    New Balance's ownership and exclusive use in commerce of the N Marks predates the use by Madden of the downward sloping stripes on the original Chasen copy of the 327 design of footwear.

70.    Upon information and belief, Madden's conduct is willful and intentional and intended to free-ride off the goodwill associated with the N Marks.  Madden is and was at all relevant times both actually and constructively aware of New Balance's prior use, ownership, and registration, and Madden's conduct is therefore also willful and intentional.

71.    Madden uses the confusingly similar design on the original Chasen shoes in interstate commerce in connection with the sale, offering for sale, distribution, and/or advertising of its footwear.

72.    Madden's use in commerce of the confusingly similar striped design in connection with copied footwear, as described above, constitutes infringement of at least the trademarks that are the subjects of U.S. Reg. Nos. 3,282,106 and 1,308,133, in violation of 15 U.S.C. § 1114, in that it is without New Balance's consent and is likely to cause confusion, mistake, and/or deception among consumers.

73.    As a direct and proximate result of Defendant's violations of 15 U.S.C. § 1114, New Balance has been and will continue to be damaged.

74.    Upon information and belief, Madden has realized, and continue to realize, substantial revenues, profits, and other benefits rightfully belonging to New Balance as a result of its wrongful conduct.

75.    Madden's conduct is causing and will continue to cause New Balance to suffer irreparable harm and, unless Madden is restrained, New Balance will continue to be so damaged, because it has no adequate remedy at law.

<u>**COUNT IV**</u>
**(False Designation of Origin—15 U.S.C. § 1125(a))**
**(The N Marks)**

76.     New Balance repeats and realleges the allegations contained in paragraphs 1 through 75 above as if fully set forth herein.

77.     As described above, New Balance owns valid and protectable rights in the distinctive N Marks for footwear.

78.     New Balance's ownership and exclusive use in commerce of the N Marks for footwear predates the use by Madden of its striped design on the original Chasen shoe design copied from the 327 footwear.

79.     Upon information and belief, Madden's conduct is willful and intentional and intended to free-ride off the goodwill associated with the N Marks.  Madden is and was at all relevant times both actually and constructively aware of New Balance's prior use, ownership, and registration, and Madden's conduct is therefore also willful and intentional.

80.     Madden uses the confusingly similar striped design in connection with the copied original Chasen footwear, as described above, in interstate commerce in connection with the sale, offering for sale, distribution, and/or advertising of its footwear.

81.     Madden's use in commerce of the confusingly similar striped design in connection with the original Chasen, as described above, constitutes false designation of origin in violation of 15 U.S.C. § 1125(a)(1)(A) in that it is likely to cause confusion, to cause mistake, or to deceive as to the affiliation, connection, or association of Madden with New Balance and/or as to the origin, sponsorship, or approval by New Balance of Madden's goods, services, or commercial activity.

82.     As a direct and proximate result of Madden's violations of 15 U.S.C. § 1125, New Balance has been and will continue to be damaged.

83.     Upon information and belief, Madden has realized, and continue to realize, substantial revenues, profits, and other benefits rightfully belonging to New Balance as a result of its wrongful conduct.

84.     Madden's conduct is causing and will continue to cause New Balance to suffer irreparable harm and, unless Madden is restrained, New Balance will continue to be so damaged, because it has no adequate remedy at law.

**COUNT V**
**(Dilution—15 U.S.C. § 1125(c))**
**(The N Marks)**

85.     New Balance repeats and realleges the allegations contained in paragraphs 1 through 84 above as if fully set forth herein.

86.     As described above, New Balance owns the distinctive and federally registered N Mark as depicted in at least U.S. Reg. Nos. 3,282,106 and 1,308,133.

87.     New Balance's ownership and exclusive use in commerce of the N Marks predates the use by Defendant of the confusingly similar striped design in connection with the original Chasen copied footwear.

88.     Through consistent and continued use, product promotion, and consumer and industry recognition, New Balance has developed the N Marks to the point that they are famous. Madden did not begin using the confusingly similar striped design in connection with the copied original Chasen footwear, as described above, in commerce until after the N Marks became famous.

89.     Upon information and belief, Madden's conduct is willful and intentional and intended to free-ride off the goodwill associated with the N Marks.  Madden is and was at all

relevant times both actually and constructively aware of New Balance's prior use, ownership, and registration, and Madden's conduct is therefore also willful and intentional.

90.    Madden's use of the confusingly similar striped design in connection with the copied original Chasen footwear is likely to cause dilution of the distinctive qualities of the N Mark in violation of 15 U.S.C. § 1125(c).

91.    As a direct and proximate result of Madden's violations of 15 U.S.C. § 1125, New Balance has been and will continue to be damaged.

92.    Upon information and belief, Madden has realized, and continue to realize, substantial revenues, profits, and other benefits rightfully belonging to New Balance as a result of its wrongful conduct.

93.    Madden's conduct is causing and will continue to cause New Balance to suffer irreparable harm and, unless Madden is restrained, New Balance will continue to be so damaged, because it has no adequate remedy at law.

### COUNT VI
### (Trademark Infringement—Mass. Gen. L. C. 110H §§ 11-14, 16)
### (The N Marks)

94.    New Balance repeats and realleges the allegations contained in paragraphs 1 through 93 above as if fully set forth herein.

95.    As described above, New Balance owns valid and protectable rights in the distinctive N Marks for footwear.

96.    New Balance's ownership and exclusive use in commerce of its N Marks for footwear predates the use by Defendant of the confusingly similar striped design in connection with the copied original Chasen footwear.

97.    Upon information and belief, Madden's conduct is willful and intentional and intended to free-ride off the goodwill associated with the N Marks.  Madden is and was at all relevant times both actually and constructively aware of New Balance's prior use, ownership, and registration of the N Marks, and Madden's conduct is therefore also willful and intentional.

98.    Madden's adoption and use of the confusingly similar striped design in connection with the copied original Chasen footwear in Massachusetts and elsewhere in connection with the sale, offering for sale, distribution, and/or advertising of its footwear is likely to cause confusion among relevant consumers.

99.    Madden's use of a confusingly similar mark, as described above, constitutes trademark infringement in violation of Mass. Gen. Laws ch. 110H §§ 12 and 14 in that it is without New Balance's consent and is likely to cause confusion, mistake, and/or deception among consumers, all to the irreparable injury of New Balance and the goodwill it has developed in the N Marks.

100.    As a direct and proximate result of Madden's violations of Mass. Gen. Laws ch. 110H §§ 12 and 14, New Balance has been and will continue to be damaged.

101.    Upon information and belief, Madden has realized, and continue to realize, substantial revenues, profits, and other benefits rightfully belonging to New Balance as a result of its wrongful conduct.

102.    Madden's conduct is causing and will continue to cause New Balance to suffer irreparable harm and, unless Madden is restrained, New Balance will continue to be so damaged, because it has no adequate remedy at law.

**COUNT VII**
**(Massachusetts Statutory Dilution—Mass. Gen. L. C. 110H § 16)**
**(The N Marks)**

103.    New Balance repeats and realleges the allegations contained in paragraphs 1 through 102 above as if fully set forth herein.

104.    As described above, New Balance owns valid and protectable rights in the distinctive N Marks for footwear.

105.    New Balance's ownership and exclusive use in commerce of its N Marks for footwear predates the use by Madden of the confusingly similar striped design in connection with the copied original Chasen footwear.

106.    Upon information and belief, Madden's conduct is willful and intentional and intended to free-ride off the goodwill associated with the N Marks.  Madden is and was at all relevant times both actually and constructively aware of New Balance's prior use, ownership, and registration of the N Marks, and Madden's conduct is therefore also willful and intentional.

107.    Madden's adoption and use of the confusingly similar striped design in connection with the copied original Chasen footwear as described above, constitutes statutory dilution in that it is without New Balance's consent and has created and will continue to create a likelihood of injury to New Balance's reputation and/or a likelihood of dilution of the distinctive quality of the N Marks in violation of Mass. Gen. Laws ch. 11H § 13.

108.    As a direct and proximate result of Madden's dilution of the N Marks, New Balance has been and will continue to be damaged.

109.    Madden's conduct is causing and will continue to cause New Balance to suffer irreparable harm and, unless Madden restrained, New Balance will continue to be so damaged, because it has no adequate remedy at law.

**PRAYER FOR RELIEF**

WHEREFORE, New Balance respectfully requests the following relief:

A.     That this Court enter judgment that: (i) Madden has infringed the '755 Patent in violation of 35 U.S.C. § 271; (ii) Madden has infringed the '813 Patent in violation of 35 U.S.C. § 271; (iii) Madden has infringed the N Marks in violation of 15 U.S.C. § 1114; (iv) Madden's use of the confusingly similar striped design in connection with the copied original Chasen footwear constitutes false designation of origin in violation of 15 U.S.C. § 1125; (v) Madden has diluted the N Marks in violation of 15 U.S.C. § 1125(c); (vi) Madden has infringed the N Marks in violation of Mass. Gen. L. C. 110H §§ 11-14, 16; (vii) Madden has diluted the N Marks in violation of Mass. Gen. L. C. 110H § 16; and that all of the foregoing wrongful activities by Madden were willful;

B.     That this Court enjoin Madden, its employees, agents, servants, and all in privity or acting in concert with any of them, from using any design, or any derivative(s) thereof that infringes the '755 Patent, in commerce on or in connection with Madden's footwear;

C.     That this Court enjoin Madden, its employees, agents, servants, and all in privity or acting in concert with any of them, from using any design, or any derivative(s) thereof that infringes the '813 Patent, in commerce on or in connection with Madden's footwear;

D.     That this Court enjoin Madden, its employees, agents, servants, and all in privity or acting in concert with any of them, from using the N Marks, or any derivative(s) thereof or any design(s) confusingly similar thereto, in commerce on or in connection with Madden's footwear;

E.     That this Court enter an injunction against further infringement and dilution of the N Marks, further false designation of origin concerning the N Marks, and further unfair competition and unfair or deceptive acts or practices related thereto, by Madden and its employees, agents, servants, and all in privity or acting in concert with any of them, including at least from

selling, offering to sell, distributing, importing, or advertising the infringing products, or any other apparel products that use a copy, reproduction, or colorable imitation of the N Marks;

F.     That this Court enter an order recalling all of Madden's footwear products that infringe the '755 and/or '813 Patents presently manufactured, sold, and/or distributed, and providing for a full refund for all recalled infringing products

G.     That this Court enter an order recalling all of Madden's footwear products bearing the N Marks, or any design confusingly similar thereto, presently manufactured, sold, and/or distributed, and providing for a full refund for all recalled infringing products;

H.     That this Court enter an order directing the destruction of: (i) all infringing products, including all recalled infringing products; (ii) any other footwear products that use a copy, reproduction, or colorable imitation of the N Marks in Madden's possession or control; (iii) all advertising materials related to the infringing products in Madden's possession, custody, or control, including on the Internet, pursuant to at least 15 U.S.C. § 1118;

I.     That this Court award New Balance damages adequate to compensate New Balance for the patent infringement that has occurred pursuant to 35 U.S.C. § 284, or an award of Madden's profits from its patent infringement pursuant to 35 U.S.C. § 289, together with prejudgment interest and costs and reasonable attorneys' fees, pursuant to 35 U.S.C. §§ 284 and 285;

J.     That this Court require an accounting of profits by Madden;

K.     That this Court award New Balance Madden's profits, New Balance's actual damages, enhanced damages, exemplary damages, costs, prejudgment and post judgment interest, and reasonable attorneys' fees pursuant to at least 15 U.S.C. §§ 1114(1), 1125(a), 1125(c), 1116, and/or 1117, and Mass. Gen. L. C. 110H §§ 11-14, 16; and

L.      That this Court award New Balance such other and further relief that this Court deems just and proper.

## <u>JURY DEMAND</u>

New Balance demands a trial by jury of all claims so triable.

****

Respectfully submitted,

NEW BALANCE ATHLETICS, INC.
*By its attorneys*,

*/s/ R. David Hosp*
ORRICK, HERRINGTON & SUTCLIFFE LLP
R. David Hosp (BBO# 634091)
Mark S. Puzella (BBO# 644850)
Sheryl K. Garko (BBO# 657735)
Laura B. Najemy (BBO# 678756)
222 Berkeley Street
Boston, MA, 02116
Telephone:  617.880.1800
dhosp@orrick.com
mpuzella@orrick.com
sgarko@orrick.com
lnajemy@orrick.com

Dated: June 7, 2022